UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JAMES ROBERT BIANCO,

      Plaintiff,

v.                         Case No:   2:18-cv-570-FtM-NPM

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____

## OPINION AND ORDER

This matter comes before the Court on the Complaint, filed on August 20, 2018. (Doc. 1). Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance and supplemental security income benefits. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a Joint Memorandum (Doc. 21). For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.    Social Security Act Eligibility and the ALJ Decision

### A.    Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20

C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do his previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.

## B. Procedural History

On January 24, 2014, Administrative Law Judge Keith C. Pilkey rendered a decision finding Plaintiff not disabled from September 1, 2010, through the date of the decision. (Tr. at 83). On March 2, 2015, the Appeals Council denied Plaintiff's request for review of ALJ Pilkey's decision. (*Id.* at 91).

On April 1, 2015, Plaintiff filed applications for a period of disability and disability insurance benefits and supplemental security income benefits. (Tr. at 114, 227-264). Plaintiff asserted an onset date of January 25, 2014. (*Id.* at 227). Plaintiff's applications was denied initially on May 26, 2015, and on reconsideration on September 28, 2015. (*Id.* at 114, 115, 144, 145). Administrative Law Judge Troy M. Patterson ("ALJ") held a hearing on November 2, 2016. (*Id.* at 41-64). The ALJ issued an unfavorable decision on October 3, 2017. (*Id.* at 10-21). The ALJ found Plaintiff not to be under a disability from January 25, 2014, through the date of the decision. (*Id.* at 20).

On June 21, 2018, the Appeals Council denied Plaintiff's request for review. (*Id.* at 1-6). Plaintiff filed a Complaint (Doc. 1) in the United States District Court on August 20, 2018. This case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (See Doc. 14).

## C.    Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled.    *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). An ALJ must determine whether the claimant:    (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform his past relevant work; and (5) can perform other work of the sort found in the national economy.    *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).    The claimant has the burden of pursuant and proof through step four and then the burden shifts to the Commissioner at step five.    *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements through December 31, 2016.    (Tr. at 13).    At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 25, 2014, the alleged onset date.    (*Id.* at 13).    At step two, the ALJ determined that Plaintiff suffered from the following severe impairments:    "Parkinson's disease (PD); and spinal degenerative disc disease (status-post anterior cervical spinal fusion surgery) (20 [C.F.R. §§] 404.1520(c) and 416.920(c))."    (*Id.*).    At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 404.1520(d), 404.1526, 416.920(d), 416.925, and 416.926).    (*Id.* at 16).

At step four, the ALJ determined the following as to Plaintiff's residual functional

capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that
> the claimant has the residual functional capacity to perform sedentary work
> as defined in 20 [C.F.R. §§] 404.1567(a) and 416.967(a) except:  lift/carry
> up to 10 pounds occasionally, stand for one out of 8 hours, 30 minutes at a
> time, walk for one out of 8 hours, 30 minutes at a time, sit for 6 out of 8
> hours, 3 hours at a time, with need to use a cane for walking outside, with
> ability to occasionally push/pull and frequently reach, handle, finger and feel
> with the hands and frequently operate foot controls, unable to climb ladders,
> ropes or scaffolds, or to crouch or crawl, but able to occasionally perform
> other postural activities such as climbing ramps/stairs, balancing, stooping
> and kneeling, with no exposure to unprotected elevations or operation of
> motor vehicles, but with occasional exposure to moving mechanical parts,
> humidity and wetness, and frequent exposure to pulmonary irritants,
> temperature extremes and vibration, with ability to shop, travel alone, walk
> without 2 canes or crutches, walk a block at a reasonable pace on a rough
> or uneven surface, use public transportation, climb a few steps at a
> reasonable pace with a single handrail, sort, handle and use paper files,
> and carry out personal care such as meal preparation, self-feeding and
> maintenance of personal hygiene.

(*Id.* at 16-17).

The ALJ determined that Plaintiff is unable to perform his past relevant work as a

salesclerk and kitchen helper.   (*Id.* at 19).   The ALJ considered Plaintiff's age,

education, work experience, and residual functional capacity ("RFC"), and found that

there were jobs that exist in significant numbers in the national economy that Plaintiff can

perform.  (*Id.* at 20).   The ALJ noted that the vocational expert identified the following

representational occupations that an individual with Plaintiff's age, education, work

experience, and RFC would be able to perform:   (1) plastic design applier, DOT #

690.686-046; (2) document preparer, DOT # 249.587-018; and (3) table worker, DOT #

739.687-182.  (*Id.*).[1]  The ALJ concluded that Plaintiff was not under a disability at any time from January 25, 2014, through the date of the decision.  (*Id.*).

## II.  Analysis

### A.  Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine

---

[1]  "DOT" refers to the *Dictionary of Occupational Titles*.

reasonableness of factual findings).

On appeal, Plaintiff raises the following issues, as stated by the parties:

(1)     Whether the ALJ properly assessed Plaintiff's mental impairments;
(2)     Whether the ALJ failed to properly develop the record;
(3)     Whether the ALJ erred in relying on the vocational expert's statement that an individual with Plaintiff's RFC was capable of making a successful adjustment to work that exists in significant numbers in the national economy;
(4)     Whether the ALJ properly considered the opinion of Dr. Kibria; and
(5)     Whether the ALJ properly considered Plaintiff's tremors.

(Doc. 21 at 17, 28, 32, 40, 42).   The Court addresses each issue below.

### B.     Whether the ALJ Properly Assessed Plaintiff's Mental Impairments

Plaintiff argues that the ALJ erred in failing:   (1) to conduct the special psychological review technique; (2) to find Plaintiff's mental impairments severe; and (3) to include relevant limitations in the RFC and in the questions to the vocational expert. (Doc. 21 at 17-18).   In addition, Plaintiff argues that the ALJ was required to adopt the findings of the prior January 24, 2014 decision by ALJ Pilkey that found Plaintiff's mental impairments severe.   (*Id.* at 18).

The Commissioner responds:   (1) the ALJ did conduct a psychological review technique; (2) the ALJ properly found Plaintiff's mental impairments not severe and, based on this finding, the ALJ did not need to include any limitations in the RFC regarding Plaintiff's mental status; and (3) a prior decision from a different time period does not apply to a current application for an unadjudicated period.   (*Id.* at 25-28).

The Court addresses Plaintiff's arguments out of order, beginning with the issue of whether the ALJ was required to adopt ALJ Pilkey's prior findings.

### 1.    Effect of ALJ Pilkey's Prior Decision

On January 24, 2014, ALJ Pilkey rendered a decision.   (Tr. at 66-84).   Pertinent to Plaintiff's argument here, ALJ Pilkey found Plaintiff had the following severe impairments:   "degenerative disc disease of the cervical spine, low back disorder, [and] bipolar and anxiety (20 [C.F.R. §§] 404.1520(c) and 416.920(c))."   (*Id.* at 70). Ultimately, ALJ Pilkey determined that Plaintiff was not under a disability from September 1, 2010, through January 24, 2014, the date of the decision.   (*Id.* at 84).   Here, Plaintiff argues that ALJ Patterson improperly failed to adopt ALJ Pilkey's findings and improperly omitted a finding that Plaintiff had severe mental impairments.   (Doc. 21 at 18-19).   The Commissioner argues that ALJ Pilkey's prior decision does not have an administrative *res judicata* effect on a plaintiff's current applications for benefits because the prior decision did not adjudicate the period at issue here.   (*Id.* at 27).

The Court finds that the doctrine of administrative *res judicata* does not apply in this case.   The Eleventh Circuit has held that administrative *res judicata* attaches when the agency has made a previous decision about a claimant's rights on the same facts and on the same issues and the previous decision has become final by either administrative or judicial action.   *Luckey v. Astrue*, 331 F. App'x 634, 638 (11th Cir. 2009) (citing 20 C.F.R. § 404.957(c)(1)); *see also Linder v. Comm'r of Soc. Sec. Admin.*, No. 3:13-CV-381-J-MCR, 2014 WL 1389580, at *2 (M.D. Fla. Apr. 9, 2014).   Conversely, administrative *res judicata* does not attach where the factual time period for the current application is different from the time period of the prior application.   *Linder*, 2014 WL 1389580, at *2.

Here, the prior decision adjudicated the period from September 1, 2010 through January 24, 2014, the date of the decision. (Tr. at 84). The instant action, on the other hand, involves the period from January 25, 2014 through October 3, 2017, the date of the decision. (*Id.* at 20-21). Therefore, the current application concerns an unadjudicated time period and, as such, the ALJ is not bound by ALJ Pilkey's finding that Plaintiff's bipolar and anxiety disorders constitute severe impairments. *See Linder*, 2014 WL 1389580, at *3. Therefore, administrative *res judicata* does not apply here.

## 2.    Special Psychological Review Technique

Plaintiff asserts that he was repeatedly assessed as having bipolar disorder and anxiety. (Doc. 21 at 19). Plaintiff also asserts that doctors at SalusCare prescribed psychiatric medication management for Plaintiff. (*Id.*). Based on these circumstances, Plaintiff argues that the ALJ did not adequately conduct a psychological review technique when determining that Plaintiff's mental impairments were not severe and in not including any limitations in Plaintiff's RFC as to his mental limitations. (*Id.*). The Commissioner argues that contrary to Plaintiff's argument, the ALJ adequately incorporated the analysis found in the Psychiatric Review Technique Form. (*Id.* at 25-26).

Essentially, the Psychiatric Review Technique Form ("PRTF") requires an assessment regarding how a claimant's mental impairments impact the following broad categories:    "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. § 404.1520a(c)(3). When rating the degree of limitation, the Commissioner employs a five-point scale:    "None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful

activity." 20 C.F.R. § 1520a(c)(4). An ALJ is required to incorporate the pertinent findings and conclusions based on the PRTF in the decision. *Moore v. Barnhart*, 405 F.3d 1208, 1213-14 (11th Cir. 2005); 20 C.F.R. § 1520a(e)(4). "The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section." 20 C.F.R. § 1520a(c)(4). Thus, when a plaintiff presents a colorable claim of a mental impairment, "the social security regulations require the ALJ to complete a PRTF and append it to the decision, or incorporate its mode of analysis into his findings and conclusions. Failure to do so requires remand." *Moore*, 405 F.3d at 1214; *see also Mills v. Comm'r of Soc. Sec.*, 659 F. App'x 541, 543 (11th Cir. 2016).

In the decision here, the ALJ makes the following findings:

A state agency psychological consultant reviewed the file on May 26, 2015 at the initial level and found that there was insufficient evidence to support a medically determinable mental impairment. Exhibit B3-A. After examining the updated evidence upon reconsideration on September 4, 2015, another state agency psychological consultant found that the evidence showed no more than mild mental functional limitations and, thus, no severe mental impairment. Exhibit B7-A. The reconsideration level assessment from the state agency psychological consultant was well supported by the evidence available for review through September 4, 2015, and it remains well supported by the updated evidence. Therefore, the September 4, 2015 assessment opinion from the state agency psychological consultant is accorded great weight in this decision. More specifically, the updated evidence supports finding no more than mild limitations in understanding, remembering, or applying information, interacting with others, maintaining concentration, persistence or pace, or in adaptation or self-management. Therefore, there has been no severe mental impairment since January 25, 2014.

(Tr. at 14). Thus, in this case, the ALJ made explicit findings of no more than mild limitations in understanding, remembering, or applying information; interacting with

others; concentration, persistence, or maintaining pace; and adapting or managing oneself. (*Id.*).

The ALJ based these findings on the consultative psychological consultants as well as the updated medical evidence. (*Id.*). In addition, the ALJ considered consultative psychologist, Theodore Weber, Psy.D.'s opinion on reconsideration dated September 4, 2015. (Tr. at 14, 122-124). Dr. Weber utilized the Psychiatric Review Technique in finding mild restrictions in daily living, maintaining social functioning, maintaining concentration, persistence, or pace, and no repeated episodes of decompensation. (*Id.* at 123). The ALJ accorded Dr. Weber's opinion great weight finding that Dr. Weber's opinion was supported by the evidence available through September 4, 2015 and also finding that this opinion remains well supported by the updated medical evidence. (*Id.*). The ALJ also noted that Plaintiff had no ongoing mental health treatment after January 24, 2014, aside from visits on July 22 and August 22, 2016, with SalusCare for medication refills. (*Id.*). In addition, the ALJ found that Plaintiff's records "give no suggestion of mental functional limitations aside from results of the claimant not taking his prescriptions for the preceding several days." (*Id.*).

Here, the ALJ addressed the broad functional areas and found Plaintiff had mild limitations in these areas. (*Id.*). When an ALJ finds the degree of limitation to be "none" or "mild," then an ALJ generally reaches the conclusion that a claimant's impairments are not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in [the applicant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1). Even though the ALJ did not specifically reference the PRTF, he did rate Plaintiff's limitations in all areas, discussed the medical evidence that addressed

these areas, and considered the psychological consultant's findings. Accordingly, the Court finds that the ALJ properly incorporated the PRTF analysis in his decision and the ALJ's decision as to this issue is supported by substantial evidence.

### 3. Severe Impairments, RFC, and Questions to Vocational Expert

Plaintiff argues that even if the ALJ did not err regarding the psychological technique requirements, he erred in failing to find Plaintiff's mental impairments severe. (Doc. 21 at 23). The Commissioner argues in response that substantial evidence supports the ALJ's severe-impairment findings based on physical and not mental conditions. (*Id.* at 26).

At step two, "[a]n impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). A severe impairment must bring about at least more than a minimal reduction in a claimant's ability to work, and must last continuously for at least twelve months. *See* 20 C.F.R. §§ 404.1505(a). This inquiry "acts as a filter" so that insubstantial impairments will not be given much weight. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). The severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

In the Eleventh Circuit, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). Instead, the ALJ is only required to consider a

claimant's impairments in combination, whether severe or not. *Id.* If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)). "[B]eyond the second step, the ALJ must consider the entirety of the claimant's limitations, regardless of whether they are individually disabling." *Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837, 841-42 (11th Cir. 2014) (internal citations omitted).

Here, at step two, the ALJ found Plaintiff suffered from the following severe impairments: Parkinson's disease and spinal degenerative disc disease (status-post anterior cervical spinal fusion surgery). (Tr. at 13). Thus, the ALJ found that Plaintiff met the step two requirements and continued with the sequential evaluation. (*Id.* at 13-21).

Therefore, as long as the ALJ considered Plaintiff's severe impairments in combination with Plaintiff's non-severe impairments – including his alleged mental impairments – any possible error is harmless. *See Griffin*, 560 F. App'x at 841-42. In the decision, the ALJ noted that the prior decision found Plaintiff's mental impairments severe. (Tr. at 14). The ALJ then discussed the medicines prescribed for Plaintiff related to his mental impairments, his lack of ongoing mental health treatment aside from two visits to SalusCare for medication refills, and his treatment records with Jonathan Daitch, M.D. (*Id.*). The ALJ found the majority of Plaintiff's records show a normal psychiatric presentation, including those records from Dr. Baker who noted no evidence of psychiatric symptoms. (*Id.*). Further, the ALJ considered the state agency psychological consultants' opinions and accorded great weight to the opinion that found

only mild limitations.  (*Id.* at 14, 123).  In addition, the ALJ stated that in making his findings, he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 [C.F.R. §§] 404.1529 and 416.929 and SSRs 16-3p.  The undersigned has also considered the opinion evidence in accordance with the requirements of 20 [C.F.R. §§] 404.1527 and 416.927."  (*Id.* at 17).  Thus, the Court finds that any potential error in not finding Plaintiff's mental impairments severe is harmless.  *See Griffin*, 560 F. App'x at 841-42.

Regarding Plaintiff's RFC, the ALJ considered the above findings in evaluating Plaintiff's RFC.  "The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments."  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations secondary to his established impairments.  *Delker v. Comm'r of Soc. Sec.*, 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009).  In determining a plaintiff's RFC, the ALJ must consider all of the relevant evidence of record.  *Barrio v. Comm'r of Soc. Sec.*, 394 F. App'x 635, 637 (11th Cir. 2010).  However, the Eleventh Circuit has consistently held that "the claimant bears the burden of proving that he is disabled, and consequently, he is responsible for producing evidence in support of his claim."  *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

In this case, Plaintiff argues that the ALJ "erred in failing to include relevant limitations in the RFC."  (Doc. 21 at 25).  As stated above, the Court finds that the ALJ did consider Plaintiff's mental impairments, but found them not severe.  Plaintiff claims

that ALJ Patterson should have adopted ALJ Pilkey's limitations of being able to understand, remember, and carry out simple instruction in a setting involving occasional interactions. (*Id.*). ALJ Patterson considered Plaintiff's allegations of "significant mental functional limitations" and found them not supported by the objective medical evidence. (Tr. at 18). "Rather, the evidence shows very good control of mental impairment symptoms on medications so long as [Plaintiff] takes them as prescribed, without any side effects." (*Id.*). Further, a diagnosis of mental impairments without more is insufficient to establish that a condition causes functional limitations. *Wood v. Astrue*, 2012 WL 834137, at *5 (M.D. Fla. Feb. 14, 2012) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005)). The Court finds that the ALJ did not err in failing to include additional limitations in Plaintiff's RFC related to his mental impairments.

Plaintiff also argues that the ALJ erred in failing to include relevant limitations in the questions posed to the vocational expert in the interrogatories. (Doc. 21 at 25). For the vocational expert's opinion to constitute substantial evidence, (if the ALJ decides to use a vocational expert), "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Winchell v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)). However, an ALJ is not required to "include findings in the hypothetical that the ALJ has found to be unsupported." *Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 903 (11th Cir. 2012) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004)). In this case, the ALJ found that Plaintiff's mental impairment symptoms were under good control with medications and, thus, did not cause additional limitations. (Tr. at 18). Specifically, the ALJ found that "the lack of a severe mental impairment negates any

requirement for inclusion of mental functional limitations in the residual functional capacity." (*Id.* at 19).

For the foregoing reasons, the Court finds that the ALJ did not err in failing to find Plaintiff's mental impairments severe and, even if the ALJ erred, the error was harmless because the ALJ found other impairments severe, continued to step three of the sequential evaluation, and considered all of Plaintiff's impairments in the decision. The Court further finds that the ALJ did not err in Plaintiff's RFC determination or in the hypothetical posed to the vocational expert.

### C.    Whether the ALJ Properly Developed the Record

In arguing that the ALJ did not properly develop the record, Plaintiff cites to state psychological consultant Michelle Butler, Psy.D.'s statements that "Clmt is alleging bipolar disorder. In order to assess this, the clmt would have to be sent for a MSE [mental status examination]," (Tr. at 104). Plaintiff claims that the Commissioner has the duty to develop the record and that includes ordering a consultative examination if one is needed. (Doc. 21 at 30). Plaintiff asserts that the ALJ erred in neglecting to order a psychological consultative examination.

The Commissioner asserts that the ALJ had ample evidence to determine that Plaintiff's mental impairment was not severe and no prejudice resulted from the ALJ's assessment based on the record before him. (*Id.* at 32).

A plaintiff bears the burden of proving he is disabled and is responsible "for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (citing 20 C.F.R. §416.912(a)). However, an ALJ "has a basic duty to develop a full and fair record." *Id.* (citing 20 C.F.R. 416.912(d)). *See* 20 C.F.R.

§404.1545(a)(3) ("However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources."). This duty applies whether or not the claimant is represented by counsel. *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995).

An ALJ is not required to order a consultative examination "as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007). In addition, a plaintiff must show prejudice before a court will find that a plaintiff's "'right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record.'" *Brown*, 44 F.3d at 934-35 (quoting *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985)). To determine if prejudice exists, the Court must determine if the record contains evidentiary gaps that will result in unfairness or clear prejudice. *Id.* at 935 (citing *Smith v. Schweiker*, 677 F.2d 826, 830 (11th Cir. 1982)).

In this case, the ALJ had ample evidence before him to determine that Plaintiff's mental impairments were not severe and no prejudice resulted from the ALJ's assessment based on the record before him. On May 26, 2015, Dr. Butler stated that for her to assess Plaintiff's bipolar disorder, she recommended that Plaintiff be sent for a mental status examination. (Tr. at 104). However, on September 4, 2015, state medical consultant Theodore Weber, Psy.D., on reconsideration, determined the record showed that Plaintiff had a history of anxiety disorder and bipolar disorder and was on

lithium for the bipolar disorder. (*Id.* at 124). Dr. Weber also found that Plaintiff's mental status evaluation was normal, that Plaintiff panics easily and sometime overreacts, but his activities of daily living were mainly limited by his physical condition. (*Id.*). From the medical evidence of record, Dr. Weber opined that Plaintiff had only mild limitations in the four broad categories. (*Id.* at 123). Further, the ALJ had the benefit of later medical records from SalusCare and Dr. Daitch, which afforded the ALJ sufficient information to reach his decision. (Tr. at 14, 645, 649, 692-701). Therefore, the Court finds that the ALJ did not err in failing to order a consultative examination and, thus, the Court finds that the record contains sufficient evidence for the ALJ to have made an informed decision.

### D. Whether the ALJ Erred in Relying on the Vocational Expert's Statement Regarding Job Numbers

Plaintiff raises two arguments regarding the vocational expert's testimony. (Doc. 21 at 32-38). First, Plaintiff argues that there is an alleged conflict between the vocational expert's testimony and the *Dictionary of Occupational Titles* ("DOT") and that the ALJ erred in not resolving the conflict. (*Id.* at 32-34). Second, Plaintiff argues that the vocational expert's testimony as to job numbers is not credible and, thus, the ALJ should not have relied upon it. (*Id.* at 34-39). The Court addresses each of these arguments in turn.[2]

---

[2] Plaintiff also raises the argument that the job of document preparer violates Plaintiff's RFC because ALJ Pilkey in a prior decision limited Plaintiff to understanding, remembering, and carrying out simple instructions. (Doc. 21 at 36-37). In Section II.A., *supra*, the Court found that ALJ Pilkely's findings were not binding on the present decision. Thus, the ALJ here was not required to include this limitation in the RFC and in a hypothetical to the vocational expert.

## 1. Whether the ALJ Resolved an Alleged Conflict Between the Vocational Expert's Testimony and the DOT on Job Duties

Plaintiff argues that the ALJ erred in relying on the vocational expert's statements because they conflicted with the DOT and the Selected Characteristics of Occupations ("SCO") Defined in the Revised Dictionary of Occupational Titles, and the ALJ did not resolve the conflict. (Doc. 21 at 32-33). Specifically, Plaintiff argues that the vocational expert found that Plaintiff was able to perform the job of plastic design applier. (*Id.* at 33). Plaintiff argues that according to the DOT, the job of plastic design applier requires constant reaching and handling, which exceeds Plaintiff's RFC of frequent reaching, handling, fingering, and feeling bilaterally. (*Id.*). Plaintiff claims that despite this apparent discrepancy between Plaintiff's abilities and the requirements of this job, the ALJ did not address this conflict and therefore, did not resolve it as is required.

The Commissioner argues that even if the ALJ erred in not resolving any conflict between the vocational expert's testimony and the DOT, the error is harmless. The Commissioner contends that the vocational expert named two other jobs that Plaintiff is able to perform with the manipulative limitations found in his RFC. Thus, the Commissioner concludes that if an error occurred, which the Commissioner does not concede, the error was harmless.

"[T]he ALJ has an affirmative obligation to identify any 'apparent' conflict and to resolve it. The failure to properly discharge this duty means the ALJ's decision is not supported by substantial evidence." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1362 (11th Cir. 2018). Thus, an ALJ must ask the vocational expert whether a conflict between his or her testimony and the DOT exists and must ask for an explanation if there

appears to be a conflict. *Id.* at 1363. Moreover, whenever a conflict is apparent, the ALJ is required to ask the vocational expert about it. *Id.* An apparent conflict is a "conflict that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony. At a minimum, a conflict is apparent if a reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case." *Id.* at 1365. "During or after the hearing, the ALJ is expected to take notice of apparent conflicts, even when they are not identified by a party, and resolve them." *Id.* at 1363. This is an independent obligation of the hearing examiner. *Id.*

In the instant case, even if the ALJ did not resolve the alleged conflict between the vocational expert's statement and the DOT and/or SCO, the error is harmless. If the vocational expert's testimony that Plaintiff is able to perform the job of plastic design applier – and the job duties of this position exceed Plaintiff's RFC limitation of frequent reaching, handling, fingering, and feeling – the ALJ listed two other jobs, namely document preparer and table worker that Plaintiff is able to perform. Plaintiff has not raised any argument that the job duties of document preparer and table worker exceed Plaintiff's RFC limitations or that the vocational expert's testimony conflicted with the DOT and/or SCO as to these positions. Thus, the Court finds that even if the ALJ erred in not resolving any apparent or perceived conflict between the vocational expert's testimony and the DOT and/or SCO as to the job of plastic design applier, the error was harmless because the ALJ listed two other positions that Plaintiff is able to perform and, therefore, does not warrant remand. *See Pichette v. Barnhart*, 185 F. App'x 855, 856 (11th Cir. 2006) (finding that remand is not warranted when an ALJ commits harmless error).

**2.      Whether the ALJ Erred in Relying on the Vocational Expert's Job Numbers**

Plaintiff argues that the vocational expert did not indicate what he relied on to determine the number of jobs in the national economy for the jobs of plastic design applier, document preparer, and table worker.   (Doc. 21 at 34).   Plaintiff then argues that without this information "it is impossible to determine from the record how the VE arrived at those numbers, which are greatly overstated." (*Id.*).   Plaintiff contends that the vocational expert's job numbers are incorrect and significantly overstated and, therefore, the ALJ erred in relying on the vocational expert's testimony.   (*Id.* at 35-38).

The Commissioner responds that the vocational expert's testimony constitutes substantial evidence in support of the ALJ's findings at step five of the sequential evaluation.   (*Id.* at 39).   The Commissioner agrees that the vocational expert did not identify the basis for the job-numbers evidence, but argues that Plaintiff did not ask for that information when given the opportunity.   (*Id.*).   The Commissioner also contends that an ALJ may rely on the vocational expert's testimony without requiring the vocational expert to produce detailed reports or statistics in support of his testimony.   (*Id.* at 39-40).   In addition, the Commissioner argues that even if the Court accepts the job numbers proffered by Plaintiff for the document preparer and table worker positions, a significant number of jobs exists in the national economy for these positions.

Once a plaintiff proves that he can no longer perform his past relevant work, then the burden shifts to the Commissioner to show that a plaintiff can perform other jobs that are significant in number in the national economy, considering the plaintiff's age, education, and work experience.   *Brooks v. Barnhart*, 133 F. App'x 669, 670 (11th Cir.

2005); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011). Thus, the ALJ has the burden to produce evidence about the existence of other work. *Brooks*, 133 F. App'x at 670. "The ALJ may satisfy this burden and provide this evidence through a [vocational expert's] testimony." *Id.* (citing *Phillips*, 357 F.3d at 1240; 20 C.F.R. § 404.1566(e)).

Jobs exist in the national economy when they exist in significant numbers either in the region where a plaintiff lives or in several other regions of the country. *Id.* "The ALJ, relying on the [vocational expert's] testimony, and not the [vocational expert], determines whether a specific number of jobs constitutes a significant number." *Id.* (citing 20 C.F.R. § 404.1512(g)). To prove disability, a plaintiff must show that he is unable to perform the specified jobs. *Id.*

Here, the vocational expert responded to Vocational Interrogatories. (Tr. at 363-66). Interrogatory No. 10, requested the following: "[c]ould the individual described in item #7 perform any unskilled occupations with jobs that exist in the national economy?" (*Id.* at 365). The vocational expert responded, "[y]es," and listed the following occupations: (1) plastic design applier, DOT # 690.686-046, sedentary, unskilled, with 100,200 projected U.S. jobs; (2) document preparer, DOT # 249.587-018, sedentary, unskilled, with 66,900 projected U.S. jobs; and (3) table worker, DOT # 739.687-182, sedentary, unskilled, with 26,700 projected U.S. jobs. (*Id.*).

The Commissioner concedes and the Court agrees that the vocational expert did not include the basis for his job numbers determinations. (*Id.* at 365). Importantly, however, Plaintiff did not raise any issue as to the jobs numbers during the administrative process even though he was given ample opportunity to do so. Specifically, on March

1, 2017, the ALJ sent a letter to Plaintiff's counsel, attorney Randal H. Thomas, informing him that he could request a supplemental hearing, submit written comments concerning the evidence, or submit additional records. (Tr. at 368-69). The ALJ allowed counsel ten (10) days to respond. (*Id.* at 369). Attorney Thomas sent the ALJ a letter acknowledging receipt of additional proposed exhibits including Exhibit B19E – Response to Vocational Interrogatory. (*Id.* at 371). Mr. Thomas discussed the questions posed to the vocational expert in the Vocational Interrogatory, and argued that there were no questions posed relative to Plaintiff's mental restrictions. (*Id.* at 371-72). Mr. Thomas did not request a supplemental hearing to question the vocational expert as to the job numbers, nor did he raise any issue in the letter related to job numbers. (*Id.*).

Mr. Thomas also submitted a Memorandum of Law in Support of Request for Review to the Appeals Council. (*Id.* at 373-75). In this Memorandum, he raised issues concerning whether Plaintiff could perform sedentary work and whether Plaintiff's bipolar disorder should have been determined to be severe. (*Id.*). Mr. Thomas did not raise any issues related to the jobs numbers to the Appeals Council.

Thus, Plaintiff had ample opportunities during the administrative process to question the vocational expert concerning how he arrived at his job numbers but chose not to inquire further. "The Social Security regulations provide that an ALJ may rely on a [vocational expert's] knowledge and expertise, and they do not require a [vocational expert] produce detailed reports or statistics in support of her testimony." *Bryant v. Comm'r of Soc. Sec.*, 451 F. App'x 838, 840 (11th Cir. 2012); *see also Curcio v. Comm'r of Soc. Sec.*, 386 F. App'x 924, 926 (11th Cir. 2010) ("[T]he Social Security regulations clearly allow that the Commissioner may rely on a VE for her knowledge or expertise.").

Additionally, the Eleventh Circuit has not fashioned a bright line rule as to what constitutes a significant number of jobs. "This Court has never held that a minimum numerical count of jobs must be identified in order to constitute work that 'exists in significant numbers' under the statute and regulations. We have concluded, however, that the 'appropriate focus under the regulation is the national economy,' not the local economy in which the claimant lives." *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 934 (11th Cir. 2015) (citation omitted). Therefore, even assuming *arguendo* that Plaintiff's job numbers' calculations are correct, Plaintiff has not shown that the job numbers would be reduced to such a level that would not constitute a significant number of jobs in the national economy. Further, there is nothing in the record that supports Plaintiff's position. *See De Lashmit v. Comm'r of Soc. Sec.*, No. 2:17-CV-363-FTM-99CM, 2018 WL 3954341, at *3 (M.D. Fla. Aug. 17, 2018) (finding that there was nothing in the record to support Plaintiff's position that the job numbers from SkillTRAN dramatically differed from those job number presented by the vocational expert).

Accordingly, the Court finds that the ALJ did not err in relying on the vocational expert's statements at step five of the sequential evaluation and, further the ALJ's decision is supported by substantial evidence as to this issue.

**E.      Whether the ALJ Properly Assessed Plaintiff's Use of a Cane and Ability to Use Foot Controls**

Plaintiff argues that in the RFC, the ALJ erred in failing to include additional limitations related to the use of a cane and in finding that Plaintiff can "frequently" operate foot controls. (Doc. 21 at 40-41). The Commissioner contends that Plaintiff only needs to use a cane to ambulate outside, and Plaintiff failed to show that any of the jobs that the ALJ found at step five require the operation of foot controls with both feet.

As stated above and bears repeating here, "[t]he residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations secondary to his established impairments. *Delker v. Comm'r of Soc. Sec.*, 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009). In determining a plaintiff's RFC, the ALJ must consider all of the relevant evidence of record. *Barrio v. Comm'r of Soc. Sec.*, 394 F. App'x 635, 637 (11th Cir. 2010). However, the Eleventh Circuit has consistently held that "the claimant bears the burden of proving that he is disabled, and consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

Plaintiff was referred to Eshan M. Kibria, D.O. for a neurological evaluation by the Department of Disability Determination. (Tr. at 797). Specifically as to a cane, Dr. Kibria found that Plaintiff required the use of a case to ambulate outside and could ambulate for 30 feet without a cane. (*Id.* at 800). He also found a cane medically necessary. (*Id.*). Dr. Kibria elaborated that "[f]or short walk doubt any assistive device is needed but for outdoor cane is probably reasonable gives [sic] falling tendency from use of pain and sedative meds." (*Id.* at 798).

Plaintiff argues that for any walk longer than 30 feet, he would need the use of a cane, and the RFC only provides for the use of a cane for walking outside. (Doc. 21 at 40-41; Tr. at 16). Although not the model of clarity, Dr. Kibria's report indicates that Plaintiff is required to use a cane to ambulate "outside." (Tr. at 800). Further, Dr. Kibria found Plaintiff capable of short walks without any assistive device, but it is "probably

reasonable" that Plaintiff needs an "outdoor cane." (*Id.* at 798). The Court finds that ALJ's RFC determination as to the use of a cane for walking outside is supported by substantial evidence.

Plaintiff also argues that Dr. Kibria found that Plaintiff was limited to occasionally operating foot controls with the left foot, but the ALJ only limited Plaintiff's RFC to "frequently operate foot controls." (Doc. 21 at 41; Tr. at 17). The Commissioner argues that any error is harmless because Plaintiff failed to demonstrate that any of the jobs the ALJ listed at step five require operation of foot controls with both feet. (Doc. 21 at 42). Although the burden shifts at step five to the Commissioner to produce evidence that there is other work available at significant numbers in the national economy, a plaintiff has the burden to prove that he is unable to perform the jobs the Commissioner lists. *Washington*, 906 F.3d at 1359; *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001). Here, Plaintiff failed to show that he is unable to perform the jobs of plastic design applier, document preparer, or table worker based upon his alleged limitation to occasional operation of foot controls with his left foot or that these jobs require operation of foot controls with both feet. (*See* Tr. at 801). Thus, even if the ALJ erred in failing to include a limitation as to occasionally operating foot controls with Plaintiff's left foot, this error is harmless because Plaintiff failed to show that he is unable to perform these jobs based on this limitation.

### F. Whether the ALJ Properly Considered Plaintiff's Tremors

Plaintiff argues that although the ALJ found Plaintiff to have a severe impairment of Parkinson's disease, he failed to adequately reflect the effects of this impairment in the RFC, specifically at to Plaintiff's hand tremors. (Doc. 21 at 42-43). Plaintiff asserts that

both Dr. Gitu and Dr. Toldi diagnosed Plaintiff with tremors, and that SalusCare records also documented tremors. (*Id.* at 43). The Commissioner argues that the ALJ is not required to include additional limitations in the RFC based on Plaintiff's allegations of tremors. (*Id.* a 45). The Commissioner also contends that the objective evidence of record shows that Plaintiff only occasionally exhibited a tremor and it did not impair his manipulative functioning. (*Id.*). Further, even though the ALJ did not observe a tremor at the hearing, he did include manipulative limitations in the RFC that adequately accounted for Plaintiff's alleged tremors. (*Id.* at 45-46).

An ALJ does not err by failing to include limitations in the RFC even though he finds severe limitations at step two of the sequential evaluation. *Davis v. Comm'r of Soc. Sec.*, No. 6:12-CV-1694-ORL-36, 2013 WL 6182235, at *6 (M.D. Fla. Nov. 25, 2013). The severity standard at step two is a *de minimus* hurdle to weed out non-meritorious claims and, thus, does not necessarily mean that such an impairment will affect the RFC determination. *Id.*; *see also McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) ("Step two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected.").

Regardless of whether the tremors were related to Parkinson's disease or not, Plaintiff was diagnosed with a tremor. (*See* Tr. at 513, 519 ("tremor has returned since stopping Beta Blocker"); 523, 529 ("[s]itting tremor is not that bad – right hand"); 571 ("[t]remor persists but responds well to propranolol"); 694). At times, however, the medical records reflect no tremor present. (Tr. at 687, 700, 787, 793, 798). The ALJ limited Plaintiff's RFC to occasionally push/pull and frequently reach, handle, finger, and feel with the hands. (Tr. at 16-17). These limitations mirror the limitations found by Dr.

Kibria in his report.   (*See* Tr. at 801).   The ALJ gave great weight to Dr. Kibria's opinion and "adopted as accurately describing the claimant's residual functional capacity."   (*Id.* at 19).   The Court finds that the ALJ adequately accounted for Plaintiff's tremors in the RFC and his decision is supported by substantial evidence as to this issue.

## III.   Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that substantial evidence supports the ALJ's decision and that there was either no error or no harmful error, in the ALJ's application of the correct legal standard.

Accordingly, it is hereby **ORDERED:**

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).   The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on September 27,2019.

_Nicholas P. Mizell_

NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE


Copies furnished to:
Counsel of Record
Unrepresented Parties